

FILED by ____MM____ D.C.

Aug 9, 2022

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. **22-60173-CR-SMITH/VALLE**

18 U.S.C. § 371
18 U.S.C. § 982

UNITED STATES OF AMERICA

vs.

KEEGAN HARRICHARAN,

        Defendant.
_____/

## INFORMATION

The United States Attorney charges that:

### GENERAL ALLEGATIONS

At all times material to this Information:

### The Paycheck Protection Program

1. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of Americans who were suffering from the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP").

2. In order to obtain a PPP loan, a qualifying business submitted a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. In the PPP

loan application (Small Business Administration ("SBA") Form 2483), the small business (through its authorized representative) was required to provide, among other things, its: (a) average monthly payroll expenses; and (b) number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP. In addition, businesses applying for a PPP loan were required to provide documentation confirming their payroll expenses.

3. A PPP loan application was processed by a participating lender. If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies. While it was the participating lender that issued the PPP loan, the loan was 100% guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

4. PPP loan proceeds were required to be used by the business on certain permissible expenses—payroll costs, interest on mortgages, rent, and utilities. The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on these expense items within a designated period of time and used a defined portion of the PPP loan proceeds on payroll expenses.

### The Defendant, Related Entities and Individuals

5. World Scientific Industrial and Medical, Inc. ("World Scientific") was a Florida corporation with its listed principal address in Margate, Florida.

6. Defendant **KEEGAN HARRICHARAN**, a resident of Broward County, Florida, was a vice president of World Scientific.

2

7. Bank 1 was a financial institution based in Salt Lake City, Utah, that was insured by the Federal Deposit Insurance Corporation ("FDIC"). Bank 1 was an approved SBA lender of PPP loans.

8. Bank Processor 1 was a third-party company processor, based in Redwood City, California, that processed PPP loan applications for Bank 1.

9. Individual 1 was a resident of Broward County, Florida.

10. Individual 2 was a resident of Broward County, Florida.

## Conspiracy to Commit Wire Fraud
### (18 U.S.C. § 371)

From in or around June 2020, and continuing through in or around November 2020, in Broward County, in the Southern District of Florida, and elsewhere, the defendant,

**KEEGAN HARRICHARAN,**

did willfully, that is, with the intent to further the object of the conspiracy, and knowingly combine, conspire, confederate, and agree with Individual 1, Individual 2, and with others known and unknown to the United States Attorney, to commit an offense against the United States, that is, to knowingly, and with the intent to defraud, devise, and intend to devise, a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and, for the purpose of executing the scheme and artifice, did knowingly transmit and cause to be transmitted, by means of wire communication in interstate commerce, certain writings, signs, signals, pictures and sounds, in violation of Title 18, United States Code, Section 1343.

## PURPOSE OF THE CONSPIRACY

11.     It was the purpose of the conspiracy for the defendant and his co-conspirators to unlawfully enrich themselves by, among other things: (a) submitting and causing the submission of false and fraudulent applications for loans and grants made available through the SBA to provide relief for the economic effects caused by the COVID-19 pandemic, including PPP loans; (b) offering, paying, and receiving kickbacks in return for referring other individuals for the submission of false and fraudulent loan applications; and (c) diverting fraud proceeds for the defendant's and co-conspirators' personal use, the use and benefit of others, and to further the conspiracy.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the defendant and his co-conspirators sought to accomplish the object and purpose of the conspiracy included, among others, the following:

12.     **KEEGAN HARRICHARAN**, Individual 1, Individual 2, and other co-conspirators submitted and caused the submission of fraudulent PPP loan applications for World Scientific, and other entities, via interstate wire communications.

13.     The PPP loan applications submitted by **KEEGAN HARRICHARAN**, Individual 1, Individual 2, and other co-conspirators included falsified bank statements and payroll tax forms, among other things, and falsely and fraudulently represented the borrowing entities' number of employees and amount of monthly payroll.

14.     **KEEGAN HARRICHARAN** and other co-conspirators paid Individual 1 and Individual 2, and other co-conspirators kickbacks in exchange for facilitating and obtaining the fraudulent PPP loans.

15.     As a result of the false and fraudulent PPP loan applications, Bank 1 and other

participating banks disbursed millions of dollars in PPP loan proceeds, which were transferred to **KEEGAN HARRICHARAN**, Individual 1, Individual 2, and other co-conspirators via interstate wire transmissions. **HARRICHARAN** was personally associated with at least one fraudulent PPP loan application that requested proceeds in the amount of approximately $840,827.

## OVERT ACTS

In furtherance of the conspiracy, and to accomplish its object and purpose, at least one of the co-conspirators committed and caused to be committed, in the Southern District of Florida and elsewhere, at least one of the following overt acts, among others:

1. On or about June 16, 2020, Individual 2 created an online PPP loan account for **KEEGAN HARRICHARAN** with Bank Processor 1.

2. On or about June 17, 2020, **KEEGAN HARRICHARAN** electronically signed a PPP loan application in the name "Harricharan Keegan" on behalf of World Scientific. The application form requested a loan for World Scientific based on the defendant's false and fraudulent claim that his company had 53 employees and average monthly payroll expenses of $336,331.

3. On or about June 17, 2020, **KEEGAN HARRICHARAN** received, via an electronic wire, $840,827 in PPP loan proceeds, which were deposited in his corporate bank account in the name of World Scientific.

4. On or about June 18, 2020, **KEEGAN HARRICHARAN** wrote two cashier's checks in the amount of $126,124 each to companies controlled by Individual 1. These payments represented kickback payments that **HARRICHARAN** owed to Individual 1 and Individual 2, in exchange for facilitating and obtaining the fraudulent PPP loan in the name of World Scientific.

All in violation of Title 18, United States Code, Section 371.

## **FORFEITURE ALLEGATIONS**

1. The allegations contained in this Information are hereby re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of certain property in which the defendant, **KEEGAN HARRICHARAN,** has an interest.

2. Upon conviction of a violation of Title 18, United States Code, Section 371, as alleged in this Information, the defendant shall forfeit to the United States any property constituting, or derived from, any proceeds the defendant obtained, directly or indirectly, as the result of such violation pursuant to Title 18, United States Code, Section 982(a)(2)(A).

3. If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third party;

   c. has been placed beyond the jurisdiction of the court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to the forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p).

All pursuant to Title 18, United States Code, Section 982(a)(2)(A), and the procedures set forth in Title 21, United States Code, Section 853, as incorporated by Title 18, United States Code, Section 982(b)(1).

JUAN ANTONIO GONZALEZ
UNITED STATES ATTORNEY

AMANDA PERWIN
ASSISTANT UNITED STATES ATTORNEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

CASE NO.: _____

v.

KEEGAN HARRICHARAN,

_____/
                    Defendant.

**CERTIFICATE OF TRIAL ATTORNEY\***

**Superseding Case Information:**

**Court Division** (select one)
- ☐ Miami
- ☐ Key West
- ☐ FTP
- ☒ FTL
- ☐ WPB

New Defendant(s) (Yes or No) _____
Number of New Defendants _____
Total number of New Counts _____

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. §3161.

3. Interpreter: (Yes or No) **No**
   List language and/or dialect: _____

4. This case will take **0** days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)                (Check only one)
   I   ☒ 0 to 5 days              ☐ Petty
   II  ☐ 6 to 10 days             ☐ Minor
   III ☐ 11 to 20 days            ☐ Misdemeanor
   IV  ☐ 21 to 60 days            ☒ Felony
   V   ☐ 61 days and over

6. Has this case been previously filed in this District Court? (Yes or No) **No**
   If yes, Judge _____  Case No. _____

7. Has a complaint been filed in this matter? (Yes or No) **No**
   If yes, Magistrate Case No. _____

8. Does this case relate to a previously filed matter in this District Court? (Yes or No) **Yes**
   If yes, Judge **Scola**  Case No. **22-20082-CR**

9. Defendant(s) in federal custody as of _____
10. Defendant(s) in state custody as of _____
11. Rule 20 from the _____ District of _____
12. Is this a potential death penalty case? (Yes or No) **No**
13. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard? (Yes or No) **No**
14. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss? (Yes or No) **No**

By: _____
Amanda Perwin
Assistant United States Attorney
FL Bar No.   0046814

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name**:  Keegan Harricharan

**Case No**: _____

Count #: 1

Conspiracy to Commit Wire Fraud

Title 18, United States Code, Section 371
* **Max. Term of Imprisonment:** Five (5) years
* **Mandatory Min. Term of Imprisonment (if applicable):**
* **Max. Supervised Release:** Three (3) years
* **Max. Fine:**  $250,000

*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.